UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Joshua J. Muhammad,          :
                Plaintiff,   :
                             :
        v.                   :        File No. 1:05-CV-146
                             :
Steven Gold, Sue Blair,      :
Clus Dubois, David Turner,   :
Cotov, Jackson, Torres,      :
New York State Department    :
of Corrections and Parole    :
Division, Vermont State      :
Department of Corrections,   :
                Defendants.  :

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
(Paper 26)

Plaintiff Joshua Muhammad, a Vermont inmate

proceeding *pro se*, brings this action pursuant to 42

U.S.C. § 1983.  In his complaint, Muhammad claims that

New York officials, with the assistance of Department of

Corrections personnel in Vermont, illegally seized him,

transported him to New York, and held him without legal

justification.  Defendants New York State Department of

Correctional Services ("NYDOCS"), New York State Division

of Parole ("NYSDOP"), Judith Jackson, Ruben Torres and

Anthony Cotov (collectively "New York Defendants") have

moved for summary judgment (Paper 26), arguing that

Muhammad's claims are barred, *inter alia*, by the fact

that he previously waived his right to resist or

challenge any extradition to the State of New York.  For the reasons set forth below, I recommend that the motion for summary judgment be GRANTED.

<u>Factual Background</u>

On June 13, 1994, Muhammad was convicted by a New York state court of robbery in the second degree, grand larceny, and attempted robbery in the second degree.  As a result of his conviction, Muhammad was sentenced to 2½ to 7½ years in prison.[1]  Muhammad claims that after he served his minimum sentence of 2½ years, he was released to the parole supervision of the NYSDOP.  Muhammad subsequently violated his conditions of release, and was returned to the custody of the NYDOCS.

In November, 1999, Muhammad was again released to the supervision of the NYSDOP, violated his conditions of release, and was returned to NYDOCS custody until October, 2001.  Muhammad subsequently violated the terms of his parole a third time, and was issued a notice of violation of parole on March 3, 2003.  At that time, he explains, "it was stipulated that I owed a maximum of 10

---

[1]  In much of the documentation submitted by the parties, Muhammad is referred to as Joshua Atterbury.

months and 12 days until my maximum term was to be
fulfilled . . . ."  (Paper 32 at 3).  He therefore
believed that his maximum sentence would conclude on
January 10, 2004.  (Paper 27, Ex. C at 2).

On November 26, 2003, Muhammad was released to the
NYSDOP.  Prior to his release on parole in 2003, Muhammad
executed a Certificate of Release of Parole Supervision
in which he consented to various conditions of release.
Included in the Certificate of Release was Muhammad's
waiver of his right to resist extradition to the State of
New York.  The waiver remained in effect until Muhammad's
discharge from parole or conditional release.

The New York Defendants contend that when Muhammad
executed the extradition waiver, his maximum sentence was
set to conclude on July 10, 2004.  This date is reflected
in the documents submitted by both sides, including a
copy of the signed Certificate of Release.  (Paper 33-2
at 2).  Nonetheless, as noted above, Muhammad claims that
this release date was a mistake, and that his maximum
sentence should have concluded in January, and not July,
2004.

By March 4, 2004, Muhammad had stopped attending

3

regularly-scheduled meetings with his parole officer.  On April 7, 2004, Muhammad and his attorney telephoned the NYSDOP and reported that Muhammad did not believe he should still be on parole.  Muhammad was instructed to appear at the NYSDOP that same day, but failed to do so. When Muhammad appeared at the NYSDOP on April 14, 2004, he failed a drug test.  He was instructed at that time not to travel outside of the five boroughs of New York City without the permission of his parole officer.

On April 18, 2004, Muhammad was arrested in Burlington, Vermont and charged with the sale of cocaine and domestic assault.  Muhammad had not received permission from his parole officer to come to Vermont. On April 20, 2004, the NYSDOP faxed to Vermont law enforcement authorities a warrant to be lodged as a detainer against Muhammad.  On May 7, 2004, the NYSDOP declared Muhammad delinquent from parole supervision as of March 4, 2004.

Muhammad's bail was paid in Vermont on September 27, 2004, but he was not released.  On October 5, 2004, Vermont state court Judge Mark Keller signed an "Order and Warrant for Arrest and Detention of Interstate

4

Fugitive" requiring that Muhammad be held by the Vermont Department of Corrections "for a time, not to exceed 30 days, awaiting arrest on such Governor's warrant as may issue . . . ."  The next day, Vermont authorities notified the NYSDOP that Muhammad was available to be picked up for extradition.  On October 12, 2004, Muhammad was extradited back to New York by defendants Jackson and Torres.

On October 22, 2004, Muhammad had a preliminary parole hearing at which the NYSDOP established probable cause to believe that he had violated the conditions of his release.  At the outset of the hearing, Muhammad's attorney explained that at the time of his alleged violation Muhammad did not think he should still be on parole.  "He believes there was a time calculation mistake at some point in the past, that instead of writing down 1-03, January, '03, 7-03 was written down."  (Paper 28-9 at 6).  Counsel also indicated that Muhammad had filed "a writ [of habeas corpus], which is the appropriate procedure."  Id.

At his final parole hearing on December 21, 2004, Muhammad pled guilty to the charge of failing to notify

his parole officer of his April 18, 2004 arrest, but reserved the right to argue in his habeas proceeding that he was not on parole at that time.  Specifically, Muhammad's attorney stated that his client

> believes that he's no longer on parole and the basis of that claim is set forth in the Writ that he now has pending.  So, we've entered - - I entered a guilty plea on [Muhammad's] behalf without prejudice to any claims he's making in Supreme Court with respect to the time that he owes and he wanted me to do that with the hope of, as he's noted, being released under this agreement in a matter of some days less than two weeks.
>
> THE COURT: But he understands that the Supreme Court, the A.G. and the attorney, if any, on his open case, on his open writ, they will determine whether the guilty plea does void this?
>
> COUNSEL: That's correct.

(Paper 28-12 at 9-10).

As a result of his guilty plea at the parole hearing, Muhammad's maximum term of incarceration in New York was set to expire on January 2, 2005.  Muhammad's habeas corpus petition was dismissed as moot on January 5, 2005.  Muhammad alleges that the dismissal was due, in part, to the fact that NYDOCS did not transport him to the habeas hearing.  (Paper 27, Ex. B at 2).

On January 6, 2005, New York law enforcement

officials took custody of Muhammad on a Vermont warrant relating to his 2004 arrest in Burlington.  Muhammad subsequently signed a waiver of extradition, was delivered to Vermont authorities, and was soon thereafter released in Vermont on the previously-paid bail.  At the time of filing his instant complaint, Muhammad was serving an 11½ to 12 month sentence in Vermont on the domestic assault charge.  (Paper 27, Ex. D).

Muhammad now claims that at the time of his extradition from Vermont in 2004, "[t]here was a writ of habeas corpus pending and a[n] order for a governor's warrant . . . ."  Consequently, he argues, his extradition and subsequent detention in New York was in violation of his due process rights.[2]

<u>Discussion</u>

I.  <u>Summary Judgment Standard</u>

Summary judgment should be granted only when there is no genuine issue of fact and the moving party is

_____

    [2]  It is not clear from the complaint what type of relief Muhammad is seeking.  The New York Defendants have submitted a document, drafted by Muhammad, entitled "Plaintiff Demands Trial By Jury" in which Muhammad seeks $1,000,000 in damages.  Although this document, dated August 10, 2005, includes the caption of this case, it was never received by the Court.

entitled to judgment as a matter of law.  See Fed. R.
Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317,
322 (1986).  The moving party has the initial burden of
demonstrating that there is no genuine issue of material
fact.  See Marvel Characters, Inc. v. Simon, 310 F.3d
280, 286 (2d Cir. 2002); Goenaga v. March of Dimes Birth
Defects Found., 51 F.3d 14, 18 (2d Cir. 1995) (stating
that movant may meet burden by "point[ing] to an absence
of evidence to support an essential element of the
nonmoving party's claim.").  Once the movant satisfies
this burden, the non-moving party must respond by setting
forth "specific facts showing that there is a genuine
issue for trial."  Fed. R. Civ. P. 56(e).

     In determining whether summary judgment is
appropriate, a court must "construe the facts in the
light most favorable to the non-moving party and must
resolve all ambiguities and draw all reasonable
inferences against the movant."  Williams v. R.H.
Donnelley, Corp., 368 F.3d 123, 126 (2d Cir. 2004).  "In
addition, pro se litigants must be given extra latitude,
particularly on a summary judgment motion."  Thomas v.
New York State Dep't of Corr. Servs., 2006 WL 435718, at

8

\*4 (S.D.N.Y. Feb. 23, 2006) (citing <u>McPherson v. Coombe</u>,
174 F.3d 276, 280 (2d Cir. 1999) (*pro se* pleadings should
be read liberally and interpreted "to raise the strongest
arguments that they suggest")).

II.  <u>Waiver of Extradition</u>

The New York Defendants first argue that because
Muhammad waived his right to resist extradition to New
York, his extradition and detention were lawful.
Muhammad's waiver was effective through the end of his
parole or conditional release.  Muhammad contends that
his parole ended prior to his arrest in Vermont.  If
Muhammad's parole did, in fact, terminate prior to his
arrival in Vermont, it could be argued that the waiver of
extradition was no longer in effect at that time.

The question of whether Muhammad's sentence was
fully served prior to his April, 2004 arrest in Vermont
is a matter in dispute.  Muhammad claims that there was a
scrivener's error, and may be able to produce NYDOCS
records confirming that his scheduled release date should
have been January, and not July, 2004.  The defendants,
of course, could come forward with facts to disprove his
claims.

Because this case is still in the earliest stages, Muhammad has had no opportunity to engage in discovery. Although I recommend below that summary judgment be granted to the New York Defendants on other grounds, the likelihood of a factual dispute on the question of Muhammad's correct release date, and the fact that the outcome of that dispute might determine the validity of Muhammad's waiver, means that a summary judgment based on the waiver would be premature at this time.

III.   Qualified Immunity

The individual New York Defendants are, however, entitled to summary judgment on the basis of qualified immunity.  Muhammad claims that defendants Jackson, Torres and Cotov knew that "you cannot hold a person pas[t] their maximum sentence," and that Cotov in particular was aware of Muhammad's ongoing dispute with the State of New York with respect to his release date. (Paper 32 at 9).  In response, the New York Defendants claim that, in light of Muhammad's signed waiver, they could not have understood that they were violating Muhammad's constitutional rights.

When considering qualified immunity, the court must

consider whether the facts, taken in a light most
favorable to the plaintiff, could show a constitutional
violation.  See Cowan v. Breen, 352 F.3d 756, 761 (2d
Cir. 2003).  If so, the court must determine whether the
right in question was clearly established at the time the
violation occurred, or if it would have been objectively
reasonable for the official to believe that his conduct
did not violate that right.  See Saucier v. Katz, 533
U.S. 194, 201 (2001).  If either the right was not
clearly established or a reasonable official would not
have believed his conduct would violate that right, the
official is shielded from liability for civil damages.
See Mandell v. County of Suffolk, 316 F.3d 368, 385 (2d
Cir. 2003).  Qualified immunity provides "ample
protection to all but the plainly incompetent or those
who knowingly violate the law."  Malley v. Briggs, 475
U.S. 353, 341 (1986).

Extraditing and holding a person without sufficient
legal justification is arguably a violation of that
person's constitutional rights.  See Michigan v. Doran,
439 U.S. 282, 292-95 (1978) (Blackmun, J., Brennan, J.,
Marshall, J., concurring); Giano v. Martino, 673 F. Supp.

11

92, 93-94 (E.D.N.Y. 1987).  In this case, however, the
individual New York Defendants had reason to believe that
their actions were legally justified.  With respect to
defendants Jackson and Torres, the allegation is that
they removed Muhammad from Vermont "without any documents
from the governor."  (Paper 3 at 2).  The undisputed
facts show that Vermont authorities informed the NYSDOP
that Muhammad was available for extradition.  (Paper 28
at 4-5).  When Jackson and Torres arrived in Vermont to
perform the extradition, they were in possession of
Muhammad's signed waiver.  There is nothing in the record
to suggest that Jackson and Torres had reason to doubt
the waiver's validity.  Consequently, and assuming that
wrongful extradition is a violation of clearly
established rights, Jackson and Torres were nonetheless
reasonable in believing that their conduct did not
violate Muhammad's rights.

The claim against defendant Cotov presents a closer
question, since Muhammad alleges that Cotov was aware of
his dispute with respect to his maximum sentence date.
Muhammad also alleges that Cotov "claimed to have no
control over such issues as time assessment."  (Paper 33-

12

Case 1:05-cv-00146-jgm   Document 36   Filed 04/25/06   Page 13 of 15

2 at 21). Even assuming that Cotov was aware of Muhammad's dispute, however, that fact is insufficient to render Cotov liable for Muhammad's extradition. Muhammad's correct release date is a matter that was taken before the New York state court on habeas corpus, and until the date was altered by that (or another) court, Cotov was justified in adhering to the date in his file. In other words, in the absence of a legal determination on the habeas petition, Cotov was reasonable in believing that Muhammad's extradition from Vermont was not a violation of Muhammad's clearly established constitutional rights. Accordingly, I recommend that the New York Defendants' motion for summary judgment with respect to individual defendants Jackson, Torres and Cotov be GRANTED.

IV. <u>Sovereign Immunity</u>

Muhammad's claims for money damages NYDOCS, NYSDOP, and all New York defendants sued in their official capacities are barred by the State of New York's sovereign immunity. Unless the state has waived its sovereign immunity under the Eleventh Amendment, a suit for money damages may not be maintained against the state

itself, or against any agency or department of the state. See <u>Florida Dep't of State v. Treasure Salvors</u>, 458 U.S. 670, 684 (1982).  Section 1983 does not override a state's Eleventh Amendment immunity.  See <u>Quern v. Jordan</u>, 440 U.S. 332, 342 (1979).  Eleventh Amendment immunity also protects state officials sued for damages in their official capacities, since any recovery would be expended from the public treasury.  See <u>Pennhurst State Sch. & Hosp. v. Halderman</u>, 465 U.S. 89, 101 n. 11 (1984). Accordingly, Muhammad's damages claims against the two state agencies, as well as defendants Jackson, Torres and Cotov in their officials capacities, should be DISMISSED.

<u>Conclusion</u>

For the reasons set forth above, I recommend that the New York Defendants' motion for summary judgment (Paper 26) be GRANTED, and that the claims against them be DISMISSED.

Dated at Burlington, in the District of Vermont, this day <u>24</u><sup>th</sup> of April, 2006.

/s/ Jerome J. Niedermeier
Jerome J. Niedermeier
United States Magistrate Judge

Any party may object to this Report and Recommendation within 10 days after service by filing with the clerk of the court and serving on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  See Local Rules 72.1, 72.3, 73.1; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), 6(a) and 6(e).