```
                UNITED STATES DISTRICT COURT
                         FOR THE
                   DISTRICT OF VERMONT
```

Joshua J. Muhammad,                :
            Plaintiff,             :
                                   :
    v.                             :    File No. 1:05-CV-146
                                   :
Steven Gold, Sue Blair,            :
Clus Dubois, David                 :
Turner and Vermont                 :
Department of Corrections,         :
            Defendants.            :

## AMENDED OPINION AND ORDER[1]
### (Paper 56)

Plaintiff Joshua Muhammad, a Vermont inmate proceeding *pro se*, brings this action pursuant to 42 U.S.C. § 1983. Muhammad claims that New York officials, with the assistance of Department of Corrections personnel in Vermont, illegally seized him, transported him to New York, and held him without legal justification. The New York defendants have been dismissed from the case on grounds of sovereign and qualified immunity.

Defendants Gold, Blair, Dubois and Turner (collectively "Vermont defendants") now move for summary judgment. Like the New York defendants, the Vermont defendants argue that they are protected by both sovereign and qualified immunity. The Vermont defendants also argue, *inter alia*, that Muhammad has

---

[1] The Court amends its original Opinion and Order, docketed on October 22, 2007, to include the disposition of all claims against the Vermont Department of Corrections. As discussed below, those claims are being dismissed, *sua sponte*, on the basis of Vermont's sovereign immunity.

failed to state a claim under § 1983.  For the reasons set forth below, the Vermont defendants' motion is GRANTED.

Factual Background

On June 13, 1994, Muhammad was convicted by a New York state court of robbery in the second degree, grand larceny, and attempted robbery in the second degree.[2]  On November 26, 2003, he was released to the New York State Department of Parole ("NYSDOP").  Prior to his release on parole in 2003, Muhammad executed a Certificate of Release of Parole Supervision in which he consented to various conditions of release.  Included in the Certificate of Release was Muhammad's waiver of his right to resist extradition to the State of New York.  The waiver remained in effect until Muhammad's discharge from parole or conditional release.

On April 18, 2004, Muhammad was arrested in Burlington, Vermont and charged with the sale of cocaine and domestic assault.  As a result of Muhammad's arrest, NYSDOP Parole Officer Anthony Cotov issued a warrant for his detention.  (Paper 65-9).  On September 2, 2004, Cotov faxed the warrant to Chittenden Regional Correctional Facility and asked that it be lodged as a detainer against Muhammad.  The warrant was

---

[2]   In much of the documentation submitted by the parties, Muhammad is referred to as Joshua Atterbury.

received by Corrections Service Specialist Randy Porter, and was lodged pursuant to Cotov's request.  (Paper 65-9 at 1).

Muhammad's bail was paid in Vermont on September 27, 2004, but he was not released due to the pending detainer.  On October 5, 2004, Vermont state court Judge Mark Keller signed an "Order and Warrant for Arrest and Detention of Interstate Fugitive" requiring that Muhammad be held by the Vermont Department of Corrections "for a time, not to exceed 30 days, awaiting arrest on such Governor's warrant as may issue . . . ."  The next day, Vermont authorities notified the NYSDOP that Muhammad was available to be picked up for extradition.  On October 12, 2004, Muhammad was extradited back to New York.

Muhammad's claims against the Vermont defendants focus on the extent to which they complied with extradition law and Judge Keller's order.  Muhammad argues that the warrant sent by Cotov had no legal effect in Vermont, and that the defendants failed to comply with the terms of the Uniform Criminal Extradition Act ("UCEA"), 13 V.S.A. §§ 4941, et seq.  Muhammad also claims that his extradition and subsequent detention in New York violated his due process rights under the Fifth and Fourteenth Amendments.

## Discussion

I. <u>Summary Judgment Standard</u>

Summary judgment should be granted only when there is no genuine issue of fact and the moving party is entitled to judgment as a matter of law.  <u>See</u> Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).  The moving party has the initial burden of demonstrating that there is no genuine issue of material fact.  <u>See</u> <u>Marvel Characters, Inc. v. Simon</u>, 310 F.3d 280, 286 (2d Cir. 2002); <u>Goenaga v. March of Dimes Birth Defects Found.</u>, 51 F.3d 14, 18 (2d Cir. 1995) (stating that movant may meet burden by "point[ing] to an absence of evidence to support an essential element of the nonmoving party's claim.").  Once the movant satisfies this burden, the non-moving party must respond by setting forth "specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).

In determining whether summary judgment is appropriate, a court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant."  <u>Williams v. R.H. Donnelley, Corp.</u>, 368 F.3d 123, 126 (2d Cir. 2004).  "In addition, *pro se* litigants must be given extra latitude, particularly on a summary judgment motion."  <u>Thomas v. New York State Dep't of Corr. Servs.</u>, 2006 WL 435718, at *4

(S.D.N.Y. Feb. 23, 2006) (citing McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (*pro se* pleadings should be read liberally and interpreted "to raise the strongest arguments that they suggest")).

II. Sovereign Immunity

Muhammad's claims for money damages against the Vermont defendants in their official capacities are barred by sovereign immunity. Under the doctrine of sovereign immunity, the Eleventh Amendment to the United States Constitution bars suits by private citizens against a state or its agencies in federal court unless the state has waived its immunity or Congress has properly abrogated that immunity. See Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 98-99 (1984); Seminole Tribe v. Florida, 517 U.S. 44, 55 (1996). The protection of the Eleventh Amendment also extends to suits for monetary damages against state officers sued in their official capacities. See Brandon v. Holt, 469 U.S. 464, 471 (1985). Moreover, the Supreme Court has held that, just as states and state agencies are not "persons" under § 1983, state officers acting in their official capacities are not "persons" within the meaning of the statute since they assume the identity of the government that employs them. See Hafer v. Melo, 502 U.S. 21, 27 (1991).

With respect to this case, it is clear that neither Vermont nor Congress has waived the sovereign immunity that protects the Vermont defendants from a damages action brought against them in their official capacities.  There is no indication in 42 U.S.C. § 1983 that Congress intended to abrogate state sovereign immunity, and the Supreme Court has specifically held that Congress did not intend to override well-established immunities such as state sovereign immunity when it enacted § 1983.  See Will v. Michigan Dep't of State Police, 491 U.S. 58, 67 (1989). It is equally clear that Vermont has not waived its sovereign immunity under § 1983. See 12 V.S.A. § 5601(g) (Vermont Tort Claims Act reserves Eleventh Amendment immunity for all claims not explicitly waived). Therefore, the claims against the Vermont defendants in their official capacities are DISMISSED.[3]

---

[3]  The Vermont defendants have not included the Vermont Department of Corrections in their motion for summary judgment.  Nonetheless, "the Court may *sua sponte* dismiss a claim on the ground of Eleventh Amendment immunity because it affects subject matter jurisdiction." McCullough v. Burroughs, 2005 WL 3164248, at *1 n.3 (E.D.N.Y. Nov. 29, 2005); see also Bryant v. New York State DOCS Albany, 146 F. Supp. 2d 422, 426 (S.D.N.Y. 2001); 28 U.S.C. § 1915A(b) (directing district courts *sua sponte* to dismiss prisoner claims that "fail[ ] to state a claim upon which relief may be granted").  Because Muhammad's claims against the Vermont Department of Corrections are clearly barred by the Eleventh Amendment, all claims against it are DISMISSED.

III. <u>Cause of Action under § 1983</u>

With respect to Muhammad's individual capacity claims, the defendants argue that his claims do not state a constitutional violation and thus cannot be brought pursuant to 42 U.S.C. § 1983.  Muhammad alleges that he was wrongfully denied his liberty when he was not released after posting bail on September 27, 2004.  Specifically, he claims that the New York detainer had no effect in Vermont, that the Vermont defendants ignored Judge Keller's order, and that his extradition was not in compliance with the UCEA.  As he summarizes in response to the pending summary judgment motion, "[t]he Defendants allowed and or caused the plaintiff to be turned over to N.Y.S. officials without adhering to [provisions of the UCEA codified at] 13 V.S.A. § 4955 or 13 V.S.A. § 4957."  (Paper 65 at 14).

Courts in the Circuit have held that "while violation of the [UCEA] 'may give rise to a cause of action for false arrest or false imprisonment in the asylum state, whose law were breached,' such a violation does not normally give rise to a deprivation of rights secured by the Constitution or law of the United States." <u>Giano v. Martino</u>, 673 F. Supp. 92, 93 (E.D.N.Y. 1987), <u>aff'd</u>, 835 F.2d 1429 (2d Cir. 1987) (quoting <u>Raffone v. Sullivan</u>, 436 F. Supp. 939, 941 (D. Conn. 1977)), <u>remanded without opinion</u>, 595 F.2d 1209 (2d Cir. 1979).  In

7

Raffone, Judge Newman explained that while the obligation to extradite a fugitive is imposed by the Constitution, federal law does not set forth the procedures for effecting extradition.  436 F. Supp. at 940.  "This task has been left to the states themselves."  Id.  Because the procedural "safeguards derive from state rather than federal law, § 1983 does not provide a remedy for their breach."  Id. at 941.

Judge Newman also acknowledged that a fugitive may have "some degree" of due process protection under the Fourteenth Amendment.  Id.  Nonetheless, these protections may only arise when state officials have acted in a way that "shocks the conscience," or if the accused can show that he was extradited without probable cause.  Id. at 941-42.  There are no such allegations in this case.  Here, Vermont officials complied with a request for a detainer and allowed New York officials to return Muhammad to New York.  A Vermont judge declared that Muhammad had "probably committed the crime" (Paper 33-2 at 1), and in a hearing on October 22, 2004, New York officials established probable cause for Muhammad's parole violation.  In a final parole hearing on December 21, 2004, Muhammad pled guilty to the charge of failing to notify his parole officer of his April 18, 2004 arrest.  Given these facts, there is no basis for finding that Muhammad's Fourteenth Amendment rights were violated.

Furthermore, it is undisputed that Muhammad executed a waiver of extradition as a condition of his parole. The waiver stated, in part:

> In the event that I leave the jurisdiction of the State of New York, I hereby waive my right to resist extradition to the State of New York from any state in the Union and from any territory or country outside the United States . . . . I fully understand that I have the right under the Constitution of the United States and under law to contest an effort to extradite me from another state and return me to New York, and I freely and knowingly waive this right as a condition of my Parole or Conditional Release.

(Paper 56-2 at 1). "Courts have routinely held that such a waiver of extradition 'waive[s] any constitutional rights implicated by a return for parole violation without formal extradition proceedings.'" Hinton v. Moritz, 11 F. Supp. 2d 272, 275 (W.D.N.Y. 1998) (quoting Wrenn v. California State Parole, 1992 WL 112276, at *1 (D. Kan. 1992); see also Pierson v. Grant, 527 F.2d 161, 164 (8th Cir. 1975). As in Hinton, the plaintiff here has not alleged that his waiver was either unknowing or involuntary. Consequently, Muhammad has no claim to a constitutional violation and cannot proceed under 42 U.S.C. § 1983. Hinton, 11 F. Supp. 2d at 275.

IV. Qualified Immunity

Even if Muhammad had a constitutional claim, the Vermont defendants would be entitled to qualified immunity. When considering qualified immunity, a court must first decide

9

whether the facts could show a constitutional violation.  See Cowan v. Breen, 352 F.3d 756, 761 (2d Cir. 2003).  Assuming *arguendo* that the facts could show a constitutional violation, the court would need to determine whether the right in question was clearly established at the time the violation occurred, or if it would have been objectively reasonable for the official to believe that his conduct did not violate that right.  See Saucier v. Katz, 533 U.S. 194, 201 (2001).  If either the right was not clearly established or a reasonable official would not have believed his conduct would violate that right, the official is shielded from liability for civil damages.  See Mandell v. County of Suffolk, 316 F.3d 368, 385 (2d Cir. 2003).  Qualified immunity provides "ample protection to all but the plainly incompetent or those who knowingly violate the law."  Malley v. Briggs, 475 U.S. 353, 341 (1986).

Although courts in this Circuit have generally held that a UCEA violation does not give rise to a federal constitutional claim, the Supreme Court and the Second Circuit have not addressed the issue.  The Raffone decision acknowledged that "there is some authority to the contrary." 436 F. Supp. at 940.  In any event, and because there is at least a split of authority on this question, it cannot be argued that the defendants violated a "clearly established" right.  Nor can the Court find that it was objectively

unreasonable for the defendants to act as they did without knowing that they were violating Muhammad's constitutional rights.

## Conclusion

For the reasons set forth above, the Vermont defendants' motion for summary judgment (Paper 56) is GRANTED.  Because Muhammad's federal claims do not survive the motion for summary judgment, the Court declines to exercise supplemental jurisdiction over any state law claims presented in his *pro se* complaint.  See 28 U.S.C. § 1367(c)(3).  This case is DISMISSED.

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 23rd day of October, 2007.

/s/ J. Garvan Murtha
J. Garvan Murtha
United States District Judge